IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs March 25, 2009

**EDD STEPP v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Cocke County**
**No. 30,759-I     Ben W. Hooper, II, Judge**

---

**No. E2008-01642-CCA-R3-PC - Filed December 1, 2009**

---

The Petitioner, Edd Stepp, pled guilty to nine counts of aggravated sexual battery, a Class B felony, and was sentenced as a violent offender to twelve years for each count, with four of the sentences to be served consecutively, for an effective sentence of forty-eight years. On appeal, this court modified his sentences to eight years for each count, with two of the sentences to be served consecutively, for an effective sentence of sixteen years. The Petitioner filed a petition for post-conviction relief which, following an evidentiary hearing, was dismissed by the post-conviction court. On appeal, the Petitioner argues, and the State concedes, that the post-conviction court erred in finding that the guilty pleas of the Petitioner were knowing and voluntary and in dismissing the petition. Following our review, we agree, reverse the order of the post-conviction court, and remand for the granting of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed,**
**Case Remanded**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Brad L. Davidson, Newport, Tennessee, for the appellant, Edd Stepp.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; James B. Dunn, District Attorney General; and Amanda H. Inman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**<u>FACTS</u>**

In the direct appeal of the Petitioner's convictions, this court set out the underlying facts:

On November 24, 2004, a Cocke County grand jury returned an indictment charging the [Petitioner] with nine counts of aggravated sexual battery of the female victim, who was a child under thirteen years of age. On April 4, 2005, the trial court ordered the [Petitioner] to submit to a forensic evaluation at Cherokee Health Systems in Morristown. On June 21, 2005, the [Petitioner] pled guilty, as indicted, to nine counts of aggravated sexual battery, submitting all sentencing issues to the trial court for its determination. At the sentencing hearing, the State introduced letters from the victim's mother reciting the emotional impact of the crimes upon the victim and her family, the [Petitioner's] statement to the police, the [Petitioner's] mental health evaluation from Cherokee Health Systems, and the presentence report. The [Petitioner] submitted copies of his medical records from the University of Tennessee Hospital and the Family Practice Center referencing numerous health problems and injuries from which the [Petitioner] suffered. At the conclusion of the hearing, the trial court sentenced the [Petitioner] to serve twelve years for each conviction. The court further ordered that the first four sentences be served consecutively to each other and the remaining five sentences be served concurrently, resulting in an effective sentence of forty-eight years.

The [Petitioner] is a single, seventy-year-old man who is unable to read or write with the exception that he can write his name. He attended three years of public schooling. He lives with Faye Etherton, an invalid, and assists her with her daily chores. He earns spending money by mowing yards and picking up aluminum cans. The [Petitioner] states that he is in poor health, and medical reports establish that he has been treated for hypertension, chronic obstructive pulmonary disease, and stomach problems.

The [Petitioner] and Ms. Etherton are friends of the victim's mother and grandmother. In 2003, the victim's grandmother moved to a location near Ms. Etherton. When the victim's mother worked weekends, the victim would stay with her grandmother. The victim was six and a half years old when the first offense occurred in November 2003, with the subsequent offenses occurring at least once a month over an eight-month period of time.

The victim's mother began to notice changes in the victim after the victim would return home from her weekend visits with her grandmother. The victim objected to being touched, and she stopped wearing little girl's dresses and would wear only big T-shirts and

sweat pants. She became frightened when separated from her mother and ultimately was placed on medication for anxiety attacks.

The [Petitioner] gave the following statement describing his action in the crimes to Detective Ball of the Newport Police Department:

> [The victim] would come visit Faye, who is sick. . . . The first time [it] happened I touched [the victim's] private area on top of her clothes. I didn't know what I was doing. [The victim] would visit a couple of times a week. Since then I have touched [the victim's] private part on top of her clothes 8-10 times. . . . Also during this time I showed [the victim] my private or my penis on other occasions around 5 times. The last time I touched [the victim] was the beginning of July 2004. The last time I showed her my private part . . . [was] near the end of June 2004. I did touch myself in front of her.

The victim's parents testified that the [Petitioner's] sexual contacts with the victim have left deep, emotional scars on both her and the family. The victim and her mother are attending counseling sessions as a result of the [Petitioner's] conduct.

Ms. Mary Brady, the [Petitioner's] half-sister, testified on his behalf. She described the [Petitioner] as kind and compassionate and stated that he had helped a lot of people during his life. He takes care of Ms. Etherton by taking her to the doctor, picking up her medication, and cooking for her.

The [Petitioner] was evaluated at Cherokee Health Systems, and the forensic evaluator concluded that a defense of diminished capacity based upon mental retardation could not be supported. The evaluator opined that "[the Petitioner] does have the mental ability to appreciate the wrongfulness of the crime of Aggravated Sexual Battery." The [Petitioner's] full scale IQ was 62, which placed him in the Extremely Low Range of intellectual functioning, but "[t]his score reflects the fact that [the Petitioner] has a third grade education."

State v. Edd Stepp, No. E2005-02178-CCA-R3-CD, Cocke County, slip op. 2-3 (Tenn. Crim. App. Nov. 2, 2006), perm. to appeal denied (Tenn. Jan. 29, 2007).

-3-

Additionally, this court's opinion in the direct appeal set out the guilty plea provisions to which the Petitioner agreed and explained why such provisions were not in his interest:

> The [Petitioner] agrees to plead guilty to Plea, upon stipulated facts, to the charge of Aggravated Sexual Battery X 9 and/or its lesser included offense of Attempted Aggravated Sexual Battery X 9 with court to decide guilt of which offense(s) and the State agrees to recommend to the Court the following sentence: No recommended sentence.

> A guilty plea agreement of this nature is fr[aught] with uncertainties and should be discontinued. Rule 11, Tennessee Rules of Criminal Procedure, which governs guilty pleas and plea agreements, contains no authority for this type of agreement. The plea agreement procedure of Rule 11 provides that the district attorney general and the attorney for the defendant may engage in discussions with a view toward reaching an agreement for entry of a plea of guilty to an offense, not to multiple offenses or optional offenses. See Tenn. R. Crim. P. 11(c) (emphasis added). Rule 11 specifically requires that, prior to accepting the guilty plea, the court is to inform the defendant of and determine that he understands the "nature of the charge to which the plea is offered" and to inform the defendant of the minimum and maximum sentence of the crime. Tenn. R. Crim. P. 11(c)(1) (emphasis added).

> Moreover, the voluntariness of a guilty plea of this nature is brought into question as the defendant is informed by trial counsel, during plea negotiations, that he could receive a lesser sentence if the trial judge chooses to reduce the conviction. This is an unrealistic assumption. Moreover, it is not the function of the trial judge to select the appropriate crime at the guilty plea hearing. Finally, this procedure promotes uncertainty with regard to punishment as illustrated in this case where trial counsel argued at the sentencing hearing that the [Petitioner] should receive a total sentence of three to six years with placement in a group home, and the trial court actually imposed a sentence of forty-eight years confinement in the state penitentiary.

Id. at 4-5.

At the evidentiary hearing, the former assistant district attorney who represented the State at the Petitioner's guilty plea proceeding testified that, subsequently, he became employed as an Assistant United States Attorney. He testified that to the best of his knowledge, no defendant other than the Petitioner had pled guilty before in that court to an offense as charged or a lesser-included offense. He explained why the pleas had been structured as they were:

> What I recall is that there really wasn't much hope of success at trial where [the Petitioner] could go to trial. There was a full confession that would have fully supported the indictment. I recall that we were in plea negotiations, [trial counsel] and I. I think [trial counsel] was making some arguments, I don't recall, and I think just as kind of a compromise, I guess if [trial counsel] is going to say I thought of it, I don't know, I don't remember, but it seems to me the compromise was at least this would give [the Petitioner] a chance of convincing the [c]ourt of a possible lesser charge and lesser sentence. To me that seems like . . . extra-effective counsel, not ineffective counsel, because he had the chance of getting a lesser sentence and lesser charges as opposed to what was just in the indictment, which was the aggravated sexual battery.

He acknowledged that the agreement was "unusual" and could "not honestly say, looking back at it, that it was a good idea." He said that he could not recall advising trial counsel of the punishment which the Petitioner would receive.

The Petitioner's trial counsel described the proceeding as being "in the form of a guilty plea, it's . . . basically a bench trial with stipulated facts, but it was entered in the form of a plea agreement." In response to a question as to how often he "enter[ed] pleas with clients for various possible offenses and allow[ed] the Court to determine their guilt or innocence," counsel replied:

> I was pondering that question when it was asked of [the assistant district attorney], and I won't say I've done one exactly like this, but we may on occasion where there's really no issue on one of the elements, such as whether or not something was stolen but there's an issue as far as value, we may enter a guilty plea to theft and let the Court decide the value, which, of course, can lead to a conviction for different levels of felonies. But it's not something we do a lot.

Counsel related how he had explained the possible punishment faced by the Petitioner and the sentences he hoped the trial court would impose:

> Probably that he had nine counts, they carried eight to twelve years each. The top of the line, I think it was a hundred and forty-four years if he got the maximum sentence and they were stacked. As far

as the plea agreement we did enter, our goal was to get a sentence of
three to six years with the possibility of probation.

Counsel said that he was aware that the Petitioner had a limited IQ and told the State of this fact. He said that it "appeared as though [the Petitioner] understood [the pleas of guilty]. He acted appropriately and so forth."

On cross-examination, counsel explained his meetings with the Petitioner prior to his pleas of guilty and the difficulty he had in doing so:

It was probably in the neighborhood of a half a dozen times.
I know from reflection of my file, we had problems up front with
getting [the Petitioner's] cooperation. Never could get a hold of him
prior to his first court date, which was a plea date, and, lo and behold,
he showed up and I think the judge, the Court, had to admonish him
to stay in touch with his counsel. We got the case reset. And
thereafter, he was somewhat hard to reach but we found him when we
needed to.

The Petitioner testified that he had a third grade education and could neither read nor write. He said that he did "not understand what [the plea agreement] meant." He said that he was seventy-three years old and, as we understand, had been housed in a special needs facility before being transported for his testimony at the evidentiary hearing. On cross-examination, the Petitioner testified that he had signed the waiver of rights form and recalled being questioned by the trial court before the pleas of guilty but said he "didn't understand a thing."

## ANALYSIS

On appeal, the Petitioner argues that trial counsel was ineffective because the Petitioner entered the pleas of guilty without understanding them. The State agrees that the Petitioner's guilty pleas were involuntary and unknowing and that he is entitled to post-conviction relief.

The burden in a post-conviction proceeding is on the Petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the

-6-

deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the Petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. When a petitioner pleads guilty, he must show a reasonable probability that, but for the errors of his counsel, he would not have pled guilty. See Hill v. Lockhart, 474 U.S. 52, 59 (1985); Adkins v. State, 911 S.W.2d 334, 349 (Tenn. Crim. App.1994).

In its order denying post-conviction relief, the post-conviction court found as follows:

1.    That Petitioner's testimony is not credible.

2.    That Petitioner has not suffered an abridgement of any right afforded by either the United States or Tennessee Constitution[].

3.    That Petitioner has failed to meet the applicable burden of proof.

4.    That Petitioner's trial counsel . . . was not ineffective in his representation of Petitioner.

5.    That Petitioner's guilty plea was knowingly and voluntarily entered.

On appeal, the State explains why, in its view, the pleas of guilty were involuntary and unknowing:

A review of the plea colloquy demonstrates that the trial court was unaware of the nature of the plea agreement until the end of the hearing when sentencing hearing dates were discussed. Moreover, at no point during the plea colloquy did counsel or the judge ask the [Petitioner], "if he understood that he was pleading guilty to either aggravated sexual battery or attempted aggravated sexual battery and that the determination would be left up to the judge." Furthermore, because the trial court did not determine which offense the [Petitioner] pleaded guilty to until the sentencing hearing.

The record supports the State's analysis. Although the trial court questioned the Petitioner as to the voluntariness of his pleas of guilty, the court did not explain to him or question him about the fact that, later, the court would decide whether he would be found guilty of aggravated sexual battery or attempted aggravated sexual battery. We note that according to trial counsel, a report from

Cherokee Mental Health Center prepared for the sentencing hearing stated that the Petitioner had an IQ of 62. Accordingly, we reverse the order of the post-conviction court and remand with instructions that the petition for post-conviction relief be granted.

## CONCLUSION

We conclude that the evidence preponderates against the findings of the post-conviction court that the Petitioner's pleas of guilty were knowingly and voluntarily entered, that trial counsel was not ineffective, and that the Petitioner was not prejudiced. Accordingly, we reverse the order of the post-conviction court dismissing the petition and remand the case for the granting of post-conviction relief.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE